In this particular case, Word of Life Church purchased an insurance policy from State Farm to cover wrongful acts from its directors and officers that were committed in the furtherance of a church operation. They purchased that insurance policy. A Texas court found that the Word of Life Church was liable for violations of the Texas Election Code for wrongful acts by its pastor, and so based upon that liability, a claim was submitted to State Farm to cover that claim and to defend that claim. State Farm denied both of them, and that's why we have this lawsuit. What's the scope of what you're asking for? You're asking for just the damages that were stipulated with Mayor Cook? Are you asking for that plus the defense damages? Yeah, there'll be additional damages. So both the underlying claim that we are asking for and the harm that caused the church suffer. Well, the reason I asked was that it didn't, it wasn't clear to me that there was a timely demand for defense. That issue has not been raised by the council now. The duty to defend was raised. I said I don't want to complicate things. If they didn't raise it, they didn't raise it. Yeah, right. That issue has not been raised. And so in this case, there was liability that was filed by a Texas court, two Texas courts actually, both the trial court and the appeals court, that Woodlife Church was liable to the mayor because of actions of its pastor. So we filed the claim. They denied the claim, and the district court ruled against the church in this case, primarily because of this theory, that they did not offer up sufficient evidence to prove that these wrongful acts were done in front of a church operation. That was the central essence. So under the policy, there is coverage for wrongful acts committed by one of the insureds in the operation of the church. There's no question that the actors here, Pastor Tom Brown, was an insured under the policy. There's also not an issue that these acts were wrongful. The only issue is whether or not these acts were done in operation of the church. Well, there's actually another issue. If they were done in furtherance of the church, then the question is whether the criminal act exclusion applies. So I want to ask about that. If we were to find that there's at least a fact issue about whether they were, whether he was acting in the course of the church duties, then you would get to the question of the criminal penalties that were being asserted, but in a civil context. So would there be additional evidence offered in the coverage case, or are you already barred by the fact that the court's already found these violations that do have criminal penalties? No, Your Honor. We are not bound by clerical estoppel on that issue, but I want to address the first. First of all, that issue was not raised below until the repliability was issued late in the day. We filed a motion saying you got to strike this because they never raised that as an affirmative defense. The discovery is already closed. The court allowed for that argument to come in, but then failed to decide this case based upon clerical estoppel. And so I think that's telling. If the court wants to go down that issue, it should send it back so we actually can engage in a meaningful discovery on that issue. But more to the point. I'm just trying to understand procedurally your argument on what would happen if, in fact, there appears to be coverage, but we have this exclusion. You're saying they didn't plead it, but the court allowed them to present it. Right. And so then what is it that we would be sending back? Because didn't the state courts find violations of statutes that have criminal penalties? And why wouldn't that then be a criminal act? I want to get back to the substance of your question. And no, the criminal act exclusion does not apply here. And no, the state court opinion was not a criminal matter. It was very clear that it was not a criminal matter at all presented in that case. It was said so in the pleadings. It was an injunctive claim. What would be different? In other words, we know that the state court found that these contributions were improperly made. Okay. What would be necessary in addition, because these are both civil cases, so we're talking preponderance of the evidence, so reasonable doubt isn't the issue. What additional evidence would be necessary to convert it from civil to criminal? Well, first of all, it was not a criminal matter. I think that is important to remember, that there was no criminal punishment that was sought. But the criminal act exclusion doesn't, it does not require that there be a criminal conviction. Right. So what I'm saying is both are civil, civil, so there's preponderance of the evidence. I'm not talking about burden of proof. I'm saying, what else would we add? What would be needed to be found? And how would that be found? So the constitutional arguments, obviously, are going to be most important here. The constitutional arguments were not presented. In fact, the argument was made that the constitutional arguments were not even appropriate in a temporary injunction motion. And so the word of life church was never given even a full hearing on this matter. The appeals court specifically said this is not a decision on the merits at all. It was a temporary injunction. Well, it's not criminal because you would have had to show some level of intentionality, I would have thought, about violating the election code. And it seemed to me that the most they were showing here was a technical violation. Exactly. So there is no intentionality at all with the fact that the criminal act exclusion, there was no intention to violate the code. That's what I've been trying to ask you for the last several minutes. That would be in addition to what the courts found, you would have to show that they intended what? To violate the election code. And there was no intent to violate the election code. And in fact, the court even ruled in that consistency that these were wrongful acts because these were errors and omissions. And so these were wrongful acts under the policy. The issue then only became were these done in furthest of operation. So if we were to send it back, then one of the questions would be can they prove intentionality? Can they prove they knew it was a violation of code? Right. And that brings us to the next point is it cannot be a criminal violation. The Constitution protects and prohibits what happened here as being a violation of criminal code. But before you get to that, I want to make sure I understand your answer to Judge Haynes' question. Wouldn't we send it back? So it's State Farm's summary judgment motion, right? Right. State Farm had an opportunity for discovery. State Farm had an opportunity to argue that each of the elements of the criminal exclusion applied. Apparently, there's no evidence of intentionality. So what would we be sending back for a second bite at the apple? Like, what would be the proposition? Well, we'd go back and go to trial on this issue. So we'd go back and we'd have a trial where we can prove that. That's what you mean by the second bite. But it's not like there's new evidence, another round of discovery, another round of summary judgment briefing. That would be. No, there wouldn't be. Right. You go back to trial. But we do think it is critical. One of the issues to keep in mind is that the criminality was never an issue. You had different burdens of proof when talking about criminal violations. The constitutional issues. You don't have different burdens of proof in an insurance case on a criminal act exclusion. It's not beyond a reasonable doubt. Right. Honestly, the evidence. But as far as trying to say racial unitacata applies, that's where that decision is not racial unitacata here. Their acts were not criminal acts. They're fully protected under the U.S. Constitution. What was alleged here was that a church spoke out in opposition to mayors, was involved in a recall effort, and that that was somehow an illegal contribution. I can cite all the different kinds of cases, even from the Fifth Circuit and joint heirs of Texas for Free Enterprise, where that cannot be criminalized. And so this criminal exclusion does not apply in this case. There was no racial unitacata. There was no decision on the merits here. So as I explained earlier, what happened was that there was a decision. You're asserting essentially racial unitacata against the insurance company on the finding that the church was liable because of the minister. But then you're saying we can't apply this to a non-party, State Farm, who voluntarily was not a party. I understand that. Then but you're saying we can't apply that on the question of whether this is a criminal act. I mean, I understand the intentionality. I understand the constitutional question. That's separate from whether this has any binding effect. They did find a violation, whether knowing or intentional or otherwise. There was a violation found. That's the whole reason we're here. But we are not necessarily arguing racial unitacata on our side. That is the liability. So that is the claim that my word of life church was found liable. So that's not necessarily racial unitacata. That is the claim that we want to be paid. Well, but but you're saying they are forbidden from arguing that, look, this guy said he wasn't acting for the church. Look, he posted on the website that he's acting individually. In all these arguments, you're saying who cares because the state court found the church liable based on his actions. End of story, right? I mean, we don't have to call it racial unitacata or collateral stop or anything else. But you are saying they can't pierce that finding. I'm not necessarily suggesting that, though I think that is a fair argument. But what the court did below saying there was no corroborating evidence that this was an operation of the church. And so, no, there was a lot of significant corroborating evidence. Look at the district court's finding, which is cited on page 940 of the record. Before the district court, we had the petition that was filed against the church in this case, alleging it was the pastor's acts that bound the church. We have, again, the appellate court's finding. The plaintiff sued the corporation. He sued the pastor's actions. That was the essence of it. And so we were saying that is the corroborating evidence. Now, we think it's conclusive. But the district court dismisses that similar judgment, saying you offer no evidence beside the pastor's affidavit. We're pointing out, no, there's a significant amount of evidence here that this was done in the operation of the church. Okay, well, so there's two points you just made. One is what the pleadings said. The pleadings would have to do with the duty to defense. If the pleadings assert that the pastor was acting in the course and scope of his work for the church and did XYZ, it doesn't matter what the truth is. The truth is completely irrelevant to the duty to defend. It's an eight corners rule. So that's your argument on the eight corners. But then the truth does matter to the duty to indemnify. And there your argument is, because the state court held, the only way word of life was held liable was because of the minister has to be. That is correct. Yes. And, and to the extent that State Farm feels like... It does sound to me like you're trying to bind them to that finding, whatever you want to call it. To the extent that State Farm feels like we're stuck between a rock and a hard place, that you have a finding from a state court finding the church liable based upon actions of the pastor, but at the same time, those are not criminalized. That's really of their own making, because there was a request for them to defend the case. Before these were decided, they said, no, we're not going to defend this. Well, that put the church in a real odd position of possibly losing the church. The mayor is seeking accelerated penalties here. It could have went well over the million dollars. He was stuck by himself there. He had to make a decision. And so it was a denial of the duty to defend that also caused this rock and a hard place where you have a finding that says the church is liable. At the same time, it's not criminal and it cannot be criminalized because it's a constitutionally protected activity. And there really is no question on that issue. Well, you know, I don't think that just because you have a right to express yourself that that necessarily means the state can't put some parameters on that, such as go through a designated, you know, committee or a designated campaign fund or whatever. I mean, there can be some rules around this whole subject. But the only question here is whether it was operations of the church. I agree. And we believe the district erred in two ways with that. One, they took a very broad understanding of operations that excludes coverage. In other words, it has to be the entire church operation that he cited in the Seventh Circuit case that said it has to be like communion. You know, that's a very limited understanding of what a church does. Instead, you should interpret that term broadly to find coverage. They solicited church members to participate in this drive, didn't they? Church members participated in this. They used church premises to do the drive. Right. Presumably they used church computers in connection with the drive. Exactly. And I would like the court to just notice that historically. And that, you know, you have the disclaimer on the website, but that's the only website for the church, right? Tom Brown Org is the only website for the church. Is that correct? That is correct. I want to focus on that just a bit because I'm sure this issue will come up. There were statements that were made by Pastor Brown that this was church neither supports or opposes. But nonetheless, that was his opinion beforehand. It was rejected by the state court. And so in his opinion as to the legalities of whether his actions were in operations of the church, in front of the operation of the church, they're not controlling there. I want to be clear. You said there's only one issue, but they raised the criminal acts exclusion. So there are two issues. That's different than collateral estoppel. There's the issue of whether there's coverage at all, whether y'all fall within the coverage. That's your duty. You have a burden to prove that. Then if you do fall within coverage, it was an act of the church. Then they have a duty to prove or a burden to prove the exclusion of criminal acts. Those are two issues that were raised in this appeal. And that's where your constitutionality argument comes up, the criminal acts exclusion. Okay. Just want to be clear. The other way that I believe that this Court's opinion was an error in limiting the terms here was the church's role. I'd like the court to take judicial notice that churches have historically been involved in political matters from the Underground Railroad to the Civil Rights Act. Now, y'all's 501c3 might be hanging by a thread here. But whether or not church actually has to pay taxes is a whole other issue. They're still church. Whether or not they pay taxes on their income is a whole other issue. But it's still the operations of the church. And the court here took a very limited interpretation of the policy so as to exclude coverage. After all, it was churches in Houston that got subpoenaed over a certain ordinance, right? Exactly. Yeah. And nobody would have doubted those were the operations of the church. And their pastors were subpoenaed and their sermons were subpoenaed and so on. And I think something of the same thing was occurring here. Exactly. Right. So, if there's nothing more, I'll reserve the rest of my time for rebuttal. All three seconds. Thank you very much. All right. Mr. Noland. Good morning. Peter Noland representing State Farm Lloyds. And as the court pointed out, there are two issues and there's two points I wish to emphasize on those two issues which before the court. This is a coverage case concerning the Word of Life policy. And the question is whether this policy which covers officers and directors for only those wrongful acts directly related to the operations of their church. Do we have... Policy doesn't say directly related to operations of the church. It says operations. I believe... Does it say directly related? I believe it says... Okay, fine. I'll take your word for it. And Brown argued at the motion for summary judgment that his actions were directly related to the operation of the church because the recall election was basically a ministry of the church. The trial court found that he didn't present any evidence on that. And Brown now argues... What about the evidence of the findings of the state court? I mean, the problem is I might say I'm not responsible for this car accident. I didn't do it. But then the jury says I did. Then I want my auto carrier to pay the bill. I don't know that that's inconsistent. I didn't hit him from behind or I wasn't negligent in this. But then the jury says, yeah, you were. I want the auto coverage to cover that. Why is that inconsistent? Well, I was watching the football game last night and I thought of an analogy. Oh boy. Let's say Pastor Brown had got up and said, I'm a University of Alabama alumnus and I urge all of you to strongly support the University of Alabama football team in their game against Clemson. And he says that from the pulpit. He uses a website associated with the church to say that. He urges people to... He urges his congregation to do what they can to support the University of Alabama. You're trivializing what they were after here. Actually, what I'm trying to do is to make a distinction. And the distinction is that not all actions of a pastor are operations of a church. So I did pick one that we could all agree would not be. And so in the motion for summary judgment, what you must do then, what is incumbent upon the church to do, is to say facts which showed that this particular action of the minister, speaking from the pulpit, using the website, encouraging... How often do ministers speak from the pulpit and it's not related to the operations of the church? I may agree or disagree with whatever they're saying, but that seems to me like the quintessential operation of the church. Well, actually, the quintessential operations of the church are defined by the church in their documents, in their articles of incorporation. Oh, give me a break. I mean, this is... But the district judge didn't even cite that. No, but curiously, what he cited as the normal operations of a church are exactly those operations of a church which the church itself says, these are our operations. I mean, really, isn't this sort of in the flying in the air now? Well, Hosanna Tabor said that the church had to do with the employment of a teacher in the church's school, right? And it said, and the argument made by the then solicitor general was that the operation of a church is basically confined to the ministerial function or something, and you can't include a school. And the Supreme Court said, as a constitutional matter, of course it does. Now, I'm not saying that that doesn't govern legally, but in our historical and common understanding of a church, most churches engage in social activity, community activity, as well as the ministry and the word that they support. And this church specifically has schools in their articles of incorporation, and hospitals, and missions, and ministry. But they can't intervene publicly, albeit in violation of technical election law, to support a measure that they earlier supported as a moral principle. Whether they can or not, that's not their operation. That's, quote, political. Why is it? You explain it. Whether they can or not is not the question. The question is, was the evidence at the motion for summary judgment that they did? So, and that's why I brought up the- How do we ignore, I mean, so we've got duty to defend and duty to indemnify. Duty to defend is determined by the eight corners. The eight corners said it was acting on behalf of the church, okay? So, that is duty to defend. Duty to indemnify is where you have to prove, you know, what happened. But the starting place for that is what was found in the underlying liability action. We're skipping over something. Not all actions of a church. It's an officer and director's policy, and it says two things in that policy. One, it must be directly related to the operations of the church. And the second thing it says, it must be in your duties of managing the church. That's why not everything which is said from the pulpit is necessarily managing the church and directly related to the operations of the church. So, it is something higher than an action. What the code, the Texas election code says, that the, an agent can get the church in trouble. An agent who gets up, whether it's the pastor or whether it's the person who's passing out the plate to put your election without going to the proper procedures. So, you do not have to be the pastor to say vote for the recall election. Anybody could have done that, and it was not part of his pastoral duties to do that. Anybody could have done that. But anybody could have done that would not have caused the church to be held responsible. Ah, that's not correct, because the election code says any agent of the church would hold the agent. Well, I don't know that the guy passing out the uh, permission of the church to do what he did. One thing I looked at before I came here is, is churches all the time on the, on the, on the um, the brochures which they pass out in the beginning say go to so-and-so's crab shack or do this. They have all kinds of announcements which are made, which are not the operations of the church. And the reason I think the facts are important here is, even in my trivial one, someone could later say there are a lot of alumni of the University of Alabama who live in El Paso. And the reason I was supporting that team is because I was trying to increase the number of people who would attend my church by reaching out to all of the alumni. Why wouldn't that be the operations of the church? Just as this one, he's saying I, we did this, more people to come to church. Exactly. And that was one of the arguments he made at motion for summary judgment. Well, to keep the mayor from setting aside an ordinance that this church supported and believed was part of its ministry, why isn't that an operation of the church? It is not singing a hymn in the middle of Christmas, but it is, you know, it's what the church has decided to do. But the facts at the motion for summary judgment did not tie it to what the church decided to do. The facts of the motion for summary judgment. So it depends on what, see, that's the problem. It depends on the power of the minister. I know that in most churches, the minister is considered the pilot of the plane. And I'll tell you this, if the pilot didn't want to take off, we aren't taking off, okay? So this isn't just an ordinary guy passing out the collection plate who decides to take a little collection for a campaign or something at the same time. This is the guy that runs the church. That's why he said specifically, I am not doing this. But then the court found against that. No. Found that, no, you did do it. He doesn't have to be doing it as he said, I'm not doing this as the pastor of Word of Life Church, but he could be doing it as an agent of pastor of Life Church. That's why I pointed out the person who's passing out the plate. He's not doing it as an officer or director of the church. He's doing it as an agent of the church. Well, if a deacon had been on this website soliciting all the members to participate in the recall effort, do you think it would have had much effect? I don't know. Well, of course you do. The fact that it is the pastor who apparently runs a pretty large church who is spearheading this saying, not because it was easy to do because I thought I had to do it and other pastors encouraged me to do it. That sounds pretty pastoral to me. He said other pastors, other business people. He listed a whole... I know, but I mean, still, it sounds like a pastoral effort to me. He could have said those same words in asking you to support the University of Alabama. The problem is that if I'm sitting up here in my robe and I tell you that you need to sit down at the table, but I say, I'm just doing that as Katharina, I don't think you'd be real inclined to not sit down. But if we were on the soccer field and I said, get out of my way, I don't think you'd get out of my way. So I don't see this. When you're acting as a pastor on the church website, in the church process, with your robe on, in essence, you really can't divorce yourself from being a pastor. Frankly, as judges, we're sort of subject to rules wherever we are, but that's another question. Everything you said would also work with supporting the University of Alabama. They would listen to him when he said support the University of Alabama. Well, I don't know that you've proven that supporting the University of Alabama wouldn't be an operation of the church, if in fact that would help them get members and they believe that God had blessed the University of Alabama and not Clemson, et cetera, et cetera. That's exactly my point. You've narrowed it down. There weren't any facts that did that. In other words, you can always make up things afterwards, but at the time, he says, I'm not doing this as a pastor. I'm doing it for the sole reason to support the people's right to vote. Go ahead. Anyway, so the short answer, the short argument is there have to be facts that tie even an action of a pastor, even an action of a pastor. Let me go back to the language of the policy because the district court didn't talk about this, quote, managing the church, and I questioned that. The district court said there are two issues. Do the actions qualify as wrongful acts, and did they directly relate to operations of the church? Then it drops down to a footnote and says, when used in this provision, the unqualified word insured means the following, any of your directors, officers, or trustees, A, duly elected, and B, within the scope of their duties on your behalf. Is that what you meant when you were saying managing the church? Absolutely. But it's within the scope, which is different from managing the church. Well, it has to be. I think the management just sort of informs us as to what. Well, so you were paraphrasing. You weren't quoting. The direct operations, I think. Yes, sir. Yes. But as far as, quote, managing the church, I think that's a, that is not as broad as within the scope of their duties. I only thought that the language about managing, management responsibilities for the church, informed us as to why this is a director's. All right. Well, it gave, I got the impression that that was something in the policy, but it's not. Oh, it is in the policy. It's in the policy. It's in the policy. Managing? Yes, Your Honor. Well, how come the judge doesn't? It's right under directors and operations, the first paragraph, I believe. No, I'm saying duly elected, to serve on the managing body. I'm sorry. Page 14 of the district court opinion, footnote 34. Can I read from the policy, Your Honor? Well, did the district court misquote it? You may have quoted another section. The section I was referring to is, we will pay those sums that the insured becomes legally obligated to pay as damages because of wrongful acts committed by insured solely in the conduct of their management responsibilities for the church. And that's on page 60 of the record. It's on page 25 of the policy of insurance. Okay. So if the pastor got up and in a sermon said, Mayor, I don't remember his name. The mayor is a thief. He still has stolen money from the city. And I know this. And ladies and gentlemen, let's pray for him because he is evil. And he said that as part of his sermon. Would that be covered, the liable case by the mayor? The liable case by the mayor. I haven't thought about it. I don't know if that's a criminal act. So I don't know that that would exclude it. I'm talking about covered, not is it excluded by a criminal act. Is it covered? Is it an operation of the church when he gives a sermon? I don't know that everything in a sermon is or not. I'm sorry. It seems to be a little removed from calling the mayor a thief. It seems to be removed from the sermon. Asking to pray for him certainly seems to be part of the operation of the church. So we have to know why we're praying for him. It's not that he has cancer. It's that in and again, I'm just a total hypothetical. I don't mean to impugn this mayor. I don't know him. It's fine. I'm just saying, what if that were what he said? I think the man is evil and therefore we need to pray for him. That sounds religious. It sounds like something that could come up. And yet it also sounds like something the mayor might view as liable. I think if all you had was that the mayor is the evidence, was that the pastor said from the pulpit, the mayor's a liar. That's all you had. Then I don't think there'd be sufficient evidence to show that that was an operation of the church. Okay. So you are defining operation of the church as what? What would be enough? What would the pastor have needed to do to fall within the DNO? He could come in and say the things, the conclusions he said in his affidavit. He could have said, look, we're trying to increase. Instead of saying, I'm not doing this as a pastor. He could say, I am doing this as a pastor. I do believe that supporting this recall election will increase our flock. I do believe, you know, all the things that he wanted to say. He could have said those things at the time. And the motion for summary judgment is evidentiary. So you're saying the affidavit would be acceptable, but you just think it's self-serving and therefore we shouldn't consider it. The evidence in there is valuable, but there's no evidence to support it. For instance, wait a minute. Let's talk about that because I have a problem with this notion of self-serving affidavits. It's just a red herring because if I say you ran the red light, that's a self-serving affidavit, but I can testify to that and may be the only evidence I have against you in my car accident case, right? It may, I may be the only person that says that. There may be no other witnesses. That's why I said it. In fact, there may be a hundred witnesses who said you had a green light. I still get to go to trial and say you had a red, right? Totally self-serving. That's why I led with that. Okay. So why would we... My point is there's no facts to support it. For instance, if you, there are some... Why isn't his affidavit evidence? Because there aren't facts behind it. They're just conclusions. So a fact, for instance, in the Articles of Incorporation, there are some secular things you could do, buy and sell real estate. So the state court findings have no relevance? I mean, the district court didn't even cite them. The state court findings were that this was an action, not that it was management. It was an action of the church. It was not management or direction of the church. Because of Pastor Brown. In other words, what they found was ipso facto... Do you... Well... The pastor's acts are not operations of the church. That's all. And it's all... My simple point is... Then they would have only... Then the state court would have only enjoined Pastor Brown and found only that Pastor Brown violated the election code. But we disagree on that. Okay. Can I get to just a couple of minutes on the criminal aspect, if I may? Yeah. Let's talk about the criminal aspect. Do you agree it's your burden to prove the criminal exclusion? Yes. Do you agree that it is your burden to prove every element of the crime? No. What element of the crime would you not have to prove to warrant the criminal exclusion? Any of them. Really? Because it doesn't say crimes. It says criminal acts. So would you have to prove that a criminal act was committed? No, I have to prove that a criminal act was pled. A criminal act was pled by whom? By Mayor Cook in his petition. And where did he plead that there was an intentional or knowing violation of the election code? Didn't have to prove there's a knowing violation. Plead. Where did he plead that there was an intentional or... You said he had to plead every element. Where is that pled? I'm disagreeing with your premise. You don't have to knowingly violate the election code. The election code is very clear that when you are making the contribution, you only have to knowingly make it. Not know that it's a violation of the law. So... I'm sorry. Yes. When you're making it, you just have to know that you... And where did he plead mens rea in the complaint? There is to be some knowing or intentionality requirement. And I'm asking where is that pled in the complaint from the mayor? Because he said when he made the... When he did it, there's no... There's been no question that he knowingly used church property. It wasn't an accident. He didn't slip into church property. He knowingly used it. That's no question. Now, whether... Do you think that's enough for crime? According to the election code, it is. Intentionality. Yes. But we know that sometimes codes are construed as requiring intentionality. I mean, the election code has a lot of stuff in it that is very, very picky. And so I'm not sure. And there's very few prosecutions under it. And maybe that's because they're looking for something more than just, oops, you didn't file this quite with the right dotted I. Ellis Court, Court of Criminal Appeals, I think addresses that. And the distinction is if you're accepting it, you must know that it was made in violation. But if you're making it, the only intentionality is that you actually made it. And the reason that's important here is the duty to defend, which we started off with, you look at the pleadings. And the pleadings were you violated 094, which just requires that you know that you made it. And that's not a fact issue. You think it's a crime in the state of Texas to make a contribution, to know that you're making one, even if you don't know that it's illegal? Absolutely. I think that in the Court of Criminal Appeals for the state of Texas. Let me ask you, do you concede that there was a duty to defend? Oh, absolutely not. Because the duty to defend is from the pleadings. And the pleadings said you violated 094. That gives rise to civil liability. And it is a criminal act. So it's... But the court didn't reach the criminal act. So all the court said was... The Court of Appeals did. Huh? Pardon me? The Court of Appeals did. It said it was a criminal act. It's in the pleadings from the third court. It is a criminal act. They use those words, those very words. They say that the actions... Can I kind of back off that a little bit and go, well, we're not really finding anything. We're just kind of... This is all preliminary. It's a temporary injunction. I don't know. It's a little... Well, I don't recall him backing off the words that what he did was a criminal act. And so that's the duty to defend. Then the second half, duty to indemnify. Well, you have a duty to indemnify. If it turns out that the factual or legal problems with the criminal code, and he's found not guilty, and I'm sorry, he's found that you can't violate 094B because it's unconstitutional, then there's no liability. There's nothing to pay. If, however, and this is where you get into the res judicata, if you go all the way to the Texas Supreme Court in this particular case, and there is a finding that it was a criminal act and you are... But this is not a criminal prosecution. So that's totally superfluous to what exactly happened. You look at the pleadings as to whether they pled a criminal act. And we cite in our case... But I'm just talking, I'm just being responsive to your point that the word criminal acts has some talismanic significance here when the entire nature of the event was a civil prosecution in a case where there are basically no criminal prosecutions. That's why we cited the case of the theft of trade secrets. There were no criminal prosecutions. He was alleged to have stolen trade secrets, didn't take him to trial for... I mean, it wasn't a criminal trial. It was a civil trial. And the court said, look, we look at the pleadings. It's basically, you can plead in and out of coverage. The mayor pled you committed criminal acts for which you are civilly liable. You can't get around that. That is pleading him out of the coverage of the policy. And then if you see about indemnification, you look at what happened at the Texas courts. Which was a civil proceeding. It's almost always a civil proceeding. That's... Okay, enough. I mean, just, you know, the crime doesn't come up. You're there in a civil trial. Right. That's why you should cover it. If you were correct, there would be no exclusion for criminal acts. None. You could say, you murdered my mother. Here's the dead body. It's before the criminal trial. And the insurance company would have to defend that. I'm suing you. Like the O.J. Simpson. The courts should rule in favor of the insurance company when there are technical... You know, there have been books written about a thousand felonies a day. That every person is violating various regulatory and so on events. Unknowingly, most of the time. Now, and so, the insurance company should be able to say there are criminal acts even when there are no relevant prosecutions. That's why, as was pointed out, you look at the pleadings. The pleadings... No, we're talking duty to indemnify. Okay. You're plotting... But never mind. Did you look at what the Court of Appeals said? The Court of Appeals said criminal acts were committed. And we appreciate your argument. And you got a little extra time. Okay, I'm sorry. Thank you. It's okay. May it please the Court. I want to go back to where we started, which is the insurance policy's terms need to be interpreted in a way to find coverage and not according to the... Okay, but what about this notion of management? How is it managing the church to reach out and try to undo an ordinance by way of recalling the mayor? I think a decision by the pastor to... We do ignoring an ordinance. I'm sorry. I think a decision by the pastor to go down a certain road for church growth. That is a management decision by the church. It would be a very limited understanding of the word management that would exclude that decision when he decides to use church resources. That's managing church resources. That's managing church time. I also had a hypothetical or analogy. That is a church bingo. Now you have a real root for Clemson. Well, I'm a Nebraska fan. But nonetheless, the church bingo. They do bingos. A lot of churches will do bingos as a way of church growth. And to define operations of the church in a way that excludes actions that churches normally engage in as church growth kind of things. They'll even have Super Bowl parties as a church as a means to bring people... It's a management decision that the church makes. I want to use our resources like this. And yet, even those situations... Now that term, operations of the church, was not defined in the policy. So we cannot accept their limiting definition to say, no, operations can only mean this. And by the way, this happens to exclude coverage. That is not how this system works. No, that's true. But the Texas Supreme Court has been very clear that just because it's an insurance company doesn't mean they lose every case. So while certainly ambiguities are construed against the insurance company, certainly they can't unduly limit the policy, you know, retroactively. You still... You give them the ordinary meaning of the phrase. Right. So that's what we're struggling with here is the ordinary meaning of this phrase. Exactly. I thought of telling you... Asked him specifically to give an understanding of the term operations. And he didn't. He gave examples. He couldn't do it. And you can't then define it as a way... Because his client didn't give him permission to say what would be covered. Because it's difficult. But you can't... That's the game that can't be played when a person purchases an insurance policy and they expect for it to cover certain things. An example here, not just baptisms on a Sunday morning, but when the church engages in operation. I'm not sure that's managing the church under your opponents. Right. Because it's really hard. Where do you draw that line? And if it's not an acts of the church under some kind of course and scope of, you know, scenario. Let me ask you about the duty to defend. Because his argument is, even though the allegation was that the pastor was acting in the course and scope of his church work, that the criminal acts exclusion was pled by saying you violated 094, which is itself a criminal statute. Even if that's totally false. I mean, again, falsity, truth has no impact on duty to defend. It's just the eight corners. So if the eight corners say, like the hypo about the murder, you murdered my relative and I'm suing you for that. And then you pass that off to your homeowner's carrier. And they go, wait a minute, we don't cover murder. That's a criminal act exclusion. What would be your answer there? Two responses. Number one, you have to interpret policies in a manner consistent with finding coverage and not excluding coverage. So here, the exclusion is criminal acts, not did you plead. If you engage in criminal acts, that is an exclusion. But the duty to defend is all about the pleadings. Right, but you still. Remember the case with the drive-by shooting. And they said, I think that's Griffin. They said, as a matter of law, a drive-by shooting ain't an auto accident. OK, no matter how you dress it up. Now, how did they get there? Well, because they said that drive-by shooting is not. And so that was based just on the on the pleadings. So how is this different from the drive-by shooting? My response would be, based upon what was pled, those were not criminal acts. In other words, the allegations were that the pastor engaged in certain actions, binding the church, like using church's resources and the pulpit to promote the recall effort, and they circulated recall petitions. That is not a criminal act, period. That's a case we can go to the U.S. Supreme Court. You cannot criminalize that conduct. And so their policy, that exclusion does not apply. What was alleged as being a criminal act was not a criminal act. And I don't know how else, how more clear you can say that. But when they circulated recall petitions, and they encouraged people. What is it like when you plead that somebody did something negligently and intentionally, you know, in the alternative, that that would still need to be covered, even though the intentional would not be covered, the negligent would, not covered, I'm sorry, defended? That there would be this one sentence that says, you drove over me three times negligently, and in the alternative, you drove over me three times intentionally because you hated me, that you would still have to defend that. I think so. So you're saying, because there are other allegations that are not criminal acts, that that would have to be defended, even though there are potentially allegations of criminal acts. Aren't they all connected? Because there is really nothing here, unless you've violated the, I mean, he doesn't, just stop people from talking about him. He has to have a hook, and the hook is the election code. So it comes down to this, at the end of the day, is, what was the plot? Is that a criminal act? The answer is no, it's not a criminal act. And you, we cite the Supreme Court cases, the Fifth Circuit cases on that point. That, so the criminal act exclusion does not prevent coverage here. Now, again, to the extent they feel like they're caught between a rock and a hard place, that's their own doing by not defending the case when they were presented with the opportunity. And so, but what was alleged was done is not a criminal act. And you have to bring in the Constitution. The district court sort of agrees with you on that, doesn't he? I mean, he says, drawing all inferences in favor of Brown, a reasonable jury could conclude that his actions that violated the election code were unintentional errors. Right, and I also analogize that to a car accident. It might be, you know, it might be that they, unintentional but criminal, but. Right, so a car accident is a good analogy for that. A car accident is a criminal act, but it's not intentional. But if you ran your car into someone, well, that might be a criminal act. And so there is, the intentionality does come into both criminal acts, yes. But do they exclude coverage? No, but I do think it just comes down to. I don't think all car accidents in Texas are criminal acts. I think in Mexico they are, but I don't think they are. I do want to just make one point, because he referenced several times that these facts were not pled below, that they were pled below. In fact, page 940 says, contrary to State Farm's assertions, Cook's allegations related to Brown's and World Life Church's support of the recall do relate to the operations of the church, as Cook's allegations of Brown's affidavit make clear World Life Church, through Brown, engaged in the recall effort as the administrator of the church. We did argue that specifically, we offered facts below on that issue.  All righty. Thank you, sir.